UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

U.S. BANK NATIONAL ASSOCIATION, as Trustee for GSAMP TRUST 2007-HE1,

Plaintiff,

-against-

GOLDMAN SACHS MORTGAGE COMPANY, L.P. and GS MORTGAGE SECURITIES CORP.,

Defendants.

-------------------------------------------------------X

Case No: 19-cv-02305
[rel. 1:19-cv-02307]

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........ 1

PERTINENT FACTS ........ 3

- I. The GSAMP 2007-HE1 Transaction and Governing Documents ........ 3
- II. Procedural History ........ 4
  - A. The Initial Demand and Summons with Notice ........ 4
  - B. The Minnesota TIP Proceeding ........ 5
- III. Allegations in the Complaint ........ 6

ARGUMENT ........ 6

- I. Counts I – IV Must be Dismissed Pursuant to PSA Section 2.07 for Lack of Depositor Consent ........ 7
  - A. Controlling New York Law Requires Enforcing the Depositor's Unconditional Consent Rights ........ 7
  - B. Section 2.01 Is Irrelevant to the Depositor's Consent Right ........ 10
- II. The Claim Against the Depositor (Count V) Fails ........ 12
- III. Counts II – IV Also Should Be Dismissed Because They Fail to State Viable Claims ........ 13
  - A. The Failure to Notify Claims (Counts III and IV) Fail as a Matter of Law ........ 13
  - B. Counts II and IV Should Also Be Dismissed Because the Trustee Is Bound By The Sole Remedy Provision ........ 14
- IV. The Trustee's Claims to Punitive Damages and Attorneys' Fees Fail ........ 16

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


159 MP Corp. v. Redbridge Bedford, LLC,
33 N.Y.3d 353 (2019) ....................14

ACE Sec. Corp. Home Equity Loan Tr., Series 2007-ASAP2 v. DB Structured Prods., Inc.,
2014 N.Y. Slip. Op. 32451 (N.Y. Sup. Ct. Aug. 28, 2014) ....................19

ACE Sec. Corp. Home Equity Loan Tr., Series 2007-HE3, by HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.,
5 F. Supp. 3d 543 (S.D.N.Y. 2014) ....................16

Ambac Assurance Corp. v. Countrywide Home Loans, Inc.,
31 N.Y.3d 569 (2018) ....................15, 17

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ....................7

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ....................6, 7

Cont'l Bldg. Prods. Operating Co., LLC v. Lafarge N. Am., Inc.,
17 Civ. 2599, 2018 WL 1583309 (S.D.N.Y. Mar. 27, 2018) ....................7

DiBella v. Hopkins,
403 F.3d 102 (2d Cir. 2005) ....................15

Hooper Assoc. Ltd. v. AGS Computers, Inc.,
74 N.Y.2d 487 (1989) ....................18

In Touch Concepts, Inc. v. Cellco P'ship,
949 F. Supp. 2d 447 (S.D.N.Y. 2013) ....................9, 12

MBIA Ins. Co. v. Countrywide Home Loans, Inc.,
105 A.D.3d 412 (1st Dep't 2013) ....................12

Moran v. Erk,
11 N.Y.3d 452 (2008) ....................8, 9

Morgan Stanley Mortg. Loan Tr. 2006-13 ARX v. Morgan Stanley Mortg. Capital Holdings, LLC,
143 A.D.3d 1 (1st Dep't 2016) ....................15

N.Y.U. v. Cont'l Ins. Co.,
87 N.Y.2d 308 (1995) ....................................................................................17

Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.,
30 N.Y.3d 572 (2017) ....................................................................................15, 17

In re Ore Cargo, Inc.,
544 F.2d 80 (2d Cir. 1976)....................................................................................12

Overseas Private Inv. Corp. v. Gerwe,
12 Civ. 5833, 2016 WL 1259564 (S.D.N.Y. Mar. 28, 2016) ....................................8

Owolabi v. Bank of Am., NA,
18 Civ. 3991, 2019 WL 463849 (S.D.N.Y. Feb. 6, 2019)........................................7

Papasan v. Allain,
478 U.S. 265, 286 (1986)....................................................................................7

In re Part 60 Putback Litig.,
169 A.D.3d 217 (1st Dep't 2019) .................................................................. *passim*

Paxi, LLC v. Shiseido Ams. Corp.,
636 F. Supp. 2d 275 (S.D.N.Y. 2009)....................................................................9

Quadrant Structured Prods. Co. v. Vertin,
23 N.Y.3d 549 (2014) ....................................................................................12

SACO I Tr. 2006-5 v. EMC Mortg. LLC,
2014 N.Y. Slip. Op. 31432 (N.Y. Sup. Ct. May 29, 2014).......................................19

Sommer v. Fed. Signal Corp.,
79 N.Y.2d 540 (1992) ....................................................................................16

State Street Bank & Tr. Co. v. Inversiones Errazuriz Limitada,
374 F.3d 158 (2d Cir. 2004)....................................................................7, 8, 9

Stokes v. Lusker,
08 Civ. 3667, 2009 WL 612336 (S.D.N.Y. Mar. 4, 2009) ......................................13

Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y. Mellon,
16 Civ. 1597, 2017 WL 1103033 (S.D.N.Y. Mar. 21, 2017) ................................9, 10

U.S. Bank Nat'l Ass'n (CSMC 2007-NC1) v. DLJ Mortg. Capital, Inc.,
2015 N.Y. Slip. Op. 30084 (N.Y. Sup. Ct. Jan. 16, 2015)........................................18

U.S. Bank Nat'l Ass'n (HEAT 2007-3) v. DLJ Mortg. Capital, Inc.,
2014 N.Y. Slip Op. 31055 (N.Y. Sup. Ct. Apr. 21, 2014).........................................19

Walker v. Sheldon,
10 N.Y.2d 401 (1961) ....................................................................................................17

Waverly Mews Corp. v. Waverly Stores Assocs.,
294 A.D.2d 130 (1st Dep't 2002) ..........................................................................................18

World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.,
03 Civ. 8843, 2010 WL 3155176 (S.D.N.Y. July 30, 2010) .....................................................8

Defendants Goldman Sachs Mortgage Company, L.P. ("GSMC") and GS Mortgage Securities Corp. ("GS Securities") (together, "Goldman") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint ("Complaint") of Plaintiff U.S. Bank National Association, as Trustee for GSAMP Trust 2007-HE1 ("U.S. Bank" or "Trustee"), in its entirety.

## PRELIMINARY STATEMENT

This is a breach-of-contract action brought under the terms of a Pooling and Servicing Agreement ("PSA") that governs an RMBS transaction that closed in 2007. Plaintiff U.S. Bank, acting in its role as Trustee, seeks to compel Defendant GSMC to repurchase mortgage loans from the GSAMP 2007-HE1 Trust (the "Trust") that allegedly breach representations and warranties. The Complaint alleges five causes of action, all of which are fatally flawed as a matter of law.

Counts I – IV allege breaches of contract against the transaction's Sponsor, GSMC. The Trustee purports to bring those four counts pursuant to Section 2.07 of the PSA. But those four counts fail because under Section 2.07 the Trustee needs the consent of the Depositor, GS Securities, before bringing claims to enforce the Sponsor's representations and warranties. The Complaint alleges no such consent, and indeed, the Depositor declined consent. Section 2.07 provides in pertinent part:

> Upon discovery by any of the parties hereto of a breach of a representation or warranty [made by the Sponsor] . . . . The Trustee shall take such action, <u>with the Depositor's consent</u>, with respect to such breach . . . as may be necessary or appropriate to enforce the rights of the Trust with respect thereto.

Under controlling Second Circuit and New York precedent, where a contract provides a party with unrestricted consent rights, that party may withhold consent for any reason, or for no reason

at all. Here, because the Depositor has exercised its unrestricted right to decline the consent necessary for the Trustee to sue under Section 2.07, Counts I – IV must be dismissed.

Count V alleges breach of contract against the Depositor, GS Securities, for failing to "assist" the Trustee in pursuing claims against the Sponsor. But the sole allegation in support of that claim is that the Depositor exercised its contractual right to decline consent under Section 2.07. New York law is clear that a party does not breach a contract by exercising rights conferred to it under that same contract.

Even if the Trustee were able to sue without Depositor consent, which it is not, its claims suffer from additional defects that independently require dismissal. Counts III and IV assert claims solely against the Sponsor for breach of the PSA and related Trust agreements, alleging that the Sponsor discovered loans that breached representations and warranties "but failed to give notice of any breach to the Trustee." However, the Sponsor is <u>not</u> a party to the PSA and nothing in the PSA imposes notice obligations on non-parties. Nor does the Complaint allege any provision of the Trust agreements (which the Sponsor is a party to) requiring the Sponsor to provide notice, because none exists.

Finally, the Complaint seeks three forms of relief not available to the Trustee here: (i) unspecified "contract damages" as an alternative to specific performance of the repurchase remedy, its "sole remedy" under the PSA; (ii) punitive damages; and (iii) attorneys' fees. The Trustee apparently relies on a recent decision from the Appellate Division, First Department, in support of its claim for this improper relief, but that decision is currently on appeal to the Court of Appeals, which, given its precedents, is likely to reverse the First Department.

## PERTINENT FACTS[1]

## I. THE GSAMP 2007-HE1 TRANSACTION AND GOVERNING DOCUMENTS

This action concerns the GSAMP 2007-HE1 mortgage-backed securitization (the "Transaction"). As part of the Transaction, GSMC, as Sponsor, acquired 3,625 residential mortgage loans ("Mortgage Loans") from various originators. The Mortgage Loans were subsequently sold to GS Securities, as Depositor. They were then transferred to the Trust pursuant to the PSA, through which the Depositor also conveyed to the Trustee its rights, title, and interest in the Trust Fund, which included the Mortgage Loans. Compl. ¶ 25. Next, the Trust issued certificates of various classes, which entitled the holders to payments of principal and interest from the payment streams of the Mortgage Loans. See id. ¶¶ 16-18, 23-26.

GSMC, as Sponsor, made certain representations and warranties concerning the Mortgage Loans in the PSA and incorporated transaction documents. Subject to certain conditions, GSMC agreed to cure or repurchase any Mortgage Loan that breaches a representation or warranty in a way that "materially and adversely" affects the value of the loan or the Trust's interests. Id. ¶ 3. The PSA specifies that "cure or repurchase" is the sole remedy available against GSMC for loans that breach representations and warranties:

> It is understood and agreed that the obligation under this Agreement of any Person to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred and is continuing together with satisfaction of any related indemnification obligations shall constitute the sole remedy against such Persons respecting such breach available to Certificateholders, the Depositor, the Servicer,

---

[1] The facts in this section are derived from the Complaint, the exhibits and documents incorporated therein, and matters of which this Court may take judicial notice, including the documents attached to the Declaration of Richard A. Jacobsen ("Jacobsen Decl."). Facts derived from the Complaint are assumed true for purposes of this motion only. Defendants dispute the Complaint's allegations and deny any liability to Plaintiff.

> the Master Servicer, the Securities Administrator, each Custodian or the Trustee on their behalf.

Compl. Ex. 1, § 2.03(e) (emphasis added).

The Trustee relies on Section 2.07 of the PSA as its contractual authority to assert Counts I – IV. Section 2.07 empowers the Trustee to act only if it receives consent from the Depositor. Specifically, the section provides that upon the discovery of loans that breach representations and warranties, "[t]he Trustee shall take such action, with the Depositor's consent, with respect to such breach . . . as may be necessary or appropriate to enforce the rights of the Trust with respect thereto. . . . In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities of the Trust Fund." Id., § 2.07 ("Enforcement of Obligations for Breach of Mortgage Loan Representations") (emphasis added). Nothing in Section 2.07 conditions or restricts the Depositor's consent right.

## II. PROCEDURAL HISTORY

### A. The Initial Demand and Summons with Notice

On December 21, 2018, an unidentified alleged certificateholder (the "Holder") informed the Trustee by letter of alleged breaches of representations and warranties with respect to certain mortgage loans held in the Trust.[2] The Trustee passed along the Holder's demand letter to the Defendants and other parties. Compl. ¶ 75.

By letter dated January 11, 2019, the Trustee notified all GSAMP 2007-HE1 certificateholders of the Holder's demand letter, inviting any certificateholders "interested in directing the Trustee's actions to contact the Trustee" because the Trustee had not yet received the requisite direction and indemnity from the Holder or anyone else. Jacobsen Decl. Ex. A

---

2 See Jacobsen Decl. Ex. A ¶ 10.

¶ 12.[3] The Trustee stated that, absent further indemnity, "the Trustee was not obligated to and did not intend to pursue any further action" with respect to the Holder's allegations. Id.

Notwithstanding its prior statement that it did not intend to take further action, on February 13, 2019, the Trustee requested the Depositor's consent under Section 2.07 of the PSA to proceed with litigation based on the Holder's demand. Jacobsen Decl. Ex. A ¶ 14. Less than two days later, without obtaining the Depositor's consent, the Trustee filed a Summons with Notice in the New York Supreme Court, County of New York (Index No. 650992/2019), subsequently removed to this Court. Id. ¶¶ 13-16; Compl. ¶ 77.

### B. The Minnesota TIP Proceeding

A Trust Instruction Proceeding ("TIP") is a Minnesota state court proceeding that provides a trustee the opportunity (among other things) to seek court guidance and approval to undertake certain acts under the relevant trust agreement. On May 3, 2019, the Trustee filed a TIP in Minnesota state court, stating in its petition that it had not obtained satisfactory direction or indemnity from GSAMP 2007-HE1 certificateholders to continue prosecuting this action. Jacobsen Decl. Ex. A. Given the lack of certificateholder direction and indemnity, the Trustee asked the court to declare whether the Trustee should (i) dismiss this action or (ii) continue to prosecute the action, funded by Trust monies pursuant to Section 2.07. See id. ¶ 17.

By order dated July 17, 2019, the TIP court authorized the Trust to continue this action using trust funds. See Jacobsen Decl. Ex. B ¶ 22. The court, however, did not "express a view as to the applicability of the Depositor consent provision as set forth in PSA § 2.07 as a condition

---

[3] Under the PSA, Section 12.08—the "no action" clause—bars certificateholders from pursuing a lawsuit in the name of the Trust unless certificateholders holding at least 25% of the voting rights have made a written request to the Trustee to institute the action and "shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby." Compl. Ex. 1, § 12.08.

to the commencement or prosecution" of this action and instead deferred resolution of the Depositor consent issue to this Court. Id. ¶ 24.

## III. ALLEGATIONS IN THE COMPLAINT

The Complaint alleges five causes of action. Counts I and II allege breaches of contract against GSMC as Sponsor for its alleged failure to repurchase loans whose attributes allegedly breached representations and warranties. Compl. ¶¶ 84-101. These claims seek specific performance and damages, respectively. Id. The Trustee further alleges that due to purported "gross negligence" by GSMC, the Trustee is not limited to the "sole remedy" of repurchase agreed to in the PSA. Id. ¶¶ 99-100.

Counts III and IV allege breaches of contract premised on GSMC's alleged "failure to notify" the Trustee of breaches of representations and warranties, again seeking specific performance and damages and alleging "gross negligence." Id. ¶¶ 102-117. Count V asserts breach of contract against the Depositor, GS Securities, based on the PSA's provision that GS Securities shall use "reasonable efforts to assist the Trustee" in enforcing the Sponsor's obligations. Id. ¶¶ 118-123.

The Complaint's Prayer for Relief seeks (among other things) (i) "[r]eimbursement of the Trustee's costs and expenses, including reasonable attorneys' fees and expert fees," and (ii) "[a]ll other relief at law or in equity, including but not limited to punitive damages . . . ." Id. at 32-33.

## ARGUMENT

A complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) when it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is not sufficient. Id. at 555. "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In its consideration, a court should not "accept as true a legal conclusion couched as a factual allegation." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"In addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as well as any judicially noticeable matters." Cont'l Bldg. Prods. Operating Co., LLC v. Lafarge N. Am., Inc., 17 Civ. 2599, 2018 WL 1583309, at *4 (S.D.N.Y. Mar. 27, 2018). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." Owolabi v. Bank of Am., NA, 18 Civ. 3991, 2019 WL 463849, at *2 (S.D.N.Y. Feb. 6, 2019).

## I. COUNTS I – IV MUST BE DISMISSED PURSUANT TO PSA SECTION 2.07 FOR LACK OF DEPOSITOR CONSENT

Under New York law, the Court should enforce the PSA's Depositor consent requirement and dismiss Counts I – IV for the Trustee's failure to obtain Depositor consent.

### A. Controlling New York Law Requires Enforcing the Depositor's Unconditional Consent Rights

New York law is clear: Where a contract grants a party unconditional consent, that party may withhold consent for any reason or for no reason at all. State Street Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 170 (2d Cir. 2004).

In State Street, a credit agreement required State Street's consent to a debtor's sale of certain assets. Id. at 168-69. State Street refused consent unless the debtor provided additional payments and benefits that State Street was not otherwise entitled to under the contract. Id. at 169. The debtor argued that State Street could only withhold consent "on reasonable and rational

grounds," in accordance with the implied covenant of good faith and fair dealing. Id. The Second Circuit rejected this argument, concluding that "[w]here a contract allows a bank to withhold consent for particular conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from unreasonably or arbitrarily withholding such consent." Id. at 170 (emphasis added). In so ruling, the Second Circuit refused to read any restrictions into the contract's consent rights, because no such restrictions were expressly stated in the contract provisions. Id. The Second Circuit further held that the covenant of good faith and fair dealing did not affect State Street's unconditional right to withhold contractual consent. Id.

The New York Court of Appeals similarly refused to read restrictions into otherwise unrestricted contractual consent provisions. In Moran v. Erk, 11 N.Y.3d 452, 458-59 (2008), the Court of Appeals addressed "attorney approval" provisions in real estate contracts, which permit either buyer's or seller's attorney essentially to veto an otherwise final transaction. The Court of Appeals, echoing the logic of State Street, held that because such clauses contain no specific limitation on the attorney's right to consent, none could be inferred. Id. (rejecting defenses of breach of implied covenant of good faith and that party withheld consent in "bad faith").

Courts in this Circuit "have interpreted Moran broadly" as governing all manner of discretionary consent rights. Overseas Private Inv. Corp. v. Gerwe, 12 Civ. 5833, 2016 WL 1259564, at *7 (S.D.N.Y. Mar. 28, 2016) (collecting authority); World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 03 Civ. 8843, 2010 WL 3155176, at *13 (S.D.N.Y. July 30, 2010) ("While Moran's holding was confined to attorney approval clauses in real estate contracts, other courts have extended Moran's logic to other types of discretionary clauses."). In short, "[t]he broad application of Moran suggests that a court may not limit contractual discretion where limitations are not supported by the express contractual language." In Touch Concepts,

Inc. v. Cellco P'ship, 949 F. Supp. 2d 447, 472 (S.D.N.Y. 2013). Consequently, "unless [the] clause imposes a limit on the discretion to be exercised or explicitly states that the duty of good faith and fair dealing applies," a court is not entitled to question the exercise of such rights. Paxi, LLC v. Shiseido Ams. Corp., 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009).

Here, the consent clause provides that the Trustee "shall take such action, with the Depositor's consent . . . as may be necessary or appropriate" in response to breaches of representations and warranties by the Sponsor. Compl. Ex. 1, § 2.07 (emphasis added). Just as in State Street and Moran, the clause does not contain any express condition or limitation on the exercise of that consent right, and no other provision of the PSA (or of any other document) refers to or addresses the Depositor's right to consent to such action under Section 2.07. Consequently, the binding authority of State Street and Moran, as well as the cases applying them, controls and requires dismissal of Counts I – IV.

The Trustee will likely complain that the consent requirement should now be ignored because the Depositor and the Sponsor are affiliated (a fact that is clear on the face of the PSA). But that is not a valid basis to alter agreed-upon contractual terms in a complex commercial transaction among sophisticated parties. Judge Buchwald confronted a substantially similar issue in Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y. Mellon, 16 Civ. 1597, 2017 WL 1103033, at *1-2 (S.D.N.Y. Mar. 21, 2017). In that case, the plaintiff entities ("Triaxx") were three collateralized debt obligations ("CDOs") that had purchased certificates in 53 RMBS securitizations and sought to sue U.S. Bank (also the trustee-plaintiff here), among others, for its alleged breach of duties as trustee of the RMBS trusts. Id. However, the Triaxx entities had transferred the rights to those RMBS, including the right to sue under them, to the CDOs' Indenture Trustee. The Indenture Trustee in Triaxx was also U.S. Bank. Id.

Triaxx "argue[d] that U.S. Bank's position creates the absurd result that only U.S. Bank (as CDO Indenture Trustee) may decide to sue U.S. Bank (as RMBS Trustee), which would shield U.S. Bank from any litigation relating to these CDOs." Id. at *5. The court rejected this argument because U.S. Bank remained "open to suits from other plaintiffs or through other avenues," including by the direction of a sufficient majority of certificateholders under the terms of the CDO Indenture. Id. Here, too, requiring the Depositor's consent under Section 2.07 does not render the Sponsor immune from suit. Under Section 12.08 of the PSA, certificateholders with more than 25% of Trust voting rights may sue PSA counterparties derivatively on behalf of the Trust. See Compl. Ex. 1, § 12.08.

The plain language of the PSA is clear: The parties, including the Trustee, agreed that the Depositor would hold unqualified consent rights concerning any such action against the Sponsor brought pursuant to Section 2.07. The Trustee cannot have that agreement rewritten by this Court.

**B. Section 2.01 Is Irrelevant to the Depositor's Consent Right**

To the extent the Trustee argues that Section 2.01 of the PSA conditions the Depositor's right to consent to this action, this argument fails. Section 2.01 calls on the Depositor to take "reasonable efforts to assist the Trustee in enforcing the obligations of the Sponsor." But the only "obligations of the Sponsor" discussed in Section 2.01 (entitled "Conveyance of Mortgage Loans") are those related to the transfer of actual loan files or key loan documents from the files. See id. § 2.01. Section 2.01 does not impose a broad duty on the Depositor to enforce all the Sponsor's obligations under the PSA, much less restrict the Depositor's separate right to refuse consent to a Trustee enforcement action taken under Section 2.07.

The language in question appears in the middle of subsection (b) of Section 2.01, and serves as an ancillary obligation to the Depositor's core duty under Section 2.01 to "deliver[] or

cause[] to be delivered to the applicable Custodian for the benefit of the Certificateholders" several important mortgage loan documents. Id. The language in Section 2.01 imposing on the Depositor an obligation to "use reasonable efforts to assist the Trustee in enforcing the obligations of the Sponsor under . . . the Representations and Warranties Agreement," marries up with language in Section 4 of the Representations and Warranties Agreement (titled "Document Delivery Requirements"), which provides that the "[Sponsor] shall deliver to the Depositor all documents and instruments required under Section 2.01 of the Pooling and Servicing Agreement with respect to the Mortgage Loans." Id.; Compl. Ex. 1, Ex. S § 4. Nothing in Section 2.01 relates in any way to representations and warranties the Sponsor made about the mortgage loan attributes. See Compl. Ex. 1, § 2.01.

Plainly put, these sophisticated parties negotiated and agreed upon a term requiring the Depositor to offer "reasonable assistance" to the Trustee in obtaining the mortgage loan documents from the Sponsor. By contrast, Section 2.07, which empowers the Trustee to sue the Sponsor, subject to the Depositor's consent, for the repurchase of loans breaching representations and warranties, imposes no obligation on the Depositor to provide "reasonable assistance" in those efforts. See id. § 2.07.

If the parties had intended to impose a limitation on the Depositor's consent right under Section 2.07, they could have included an assistance requirement in Section 2.07 that mirrors the language in Section 2.01. They did not. Nor did they include any "express limitations" on the consent right in Section 2.07, even though there are numerous other examples of "express limitations" on consent rights appearing in this same PSA. See id. § 9.01(d) (requiring the Master Servicer's consent to assignment of the Servicer's rights, "which consent shall not be unreasonably withheld" (emphasis added)); § 9.10 (providing that the Master Servicer may

assign its duties "with the prior written consent of the Depositor (which shall not be unreasonably withheld or delayed)" (emphasis added)); § 10.10 (Depositor's consent "shall not be unreasonably withheld or delayed" for assignment of Securities Administrator's duties (emphasis added)). There are no such limitations on the consent right in Section 2.07. See id. § 2.07.

It is a basic tenet of contract interpretation that where parties to a contract omit terms from one provision present in similar provisions, "the inescapable conclusion is that the parties intended the omission." Quadrant Structured Prods. Co. v. Vertin, 23 N.Y.3d 549, 560 (2014); In re Ore Cargo, Inc., 544 F.2d 80, 82 (2d Cir. 1976) (applying the canon of *expressio unius est exclusio alterius*, refusing to infer omitted terms). New York courts routinely refuse to alter the meaning of RMBS contracts by inserting language that the parties intentionally omitted. See MBIA Ins. Co. v. Countrywide Home Loans, Inc., 105 A.D.3d 412, 413 (1st Dep't 2013) ("[T]hese very sophisticated parties . . . certainly could have included such language in the contracts. They did not do so, and this Court will not do so now 'under the guise of interpreting the writing.'"). Because the parties did not expressly impose a restriction on Section 2.07's consent rights as they did elsewhere in the PSA, the Court may not infer one.

## II. THE CLAIM AGAINST THE DEPOSITOR (COUNT V) FAILS

Count V asserts a breach-of-contract claim against the Depositor based on an alleged "failure to assist" the Trustee in pursuing its rights against the Sponsor. The only allegation in support of this claim is that the Depositor declined to consent to this litigation. See Compl. ¶¶ 77, 122. The claim fails to state a cognizable claim because the Depositor is entitled to withhold its consent to this suit under Section 2.07, as set forth above. The Depositor cannot be in "breach" of the PSA for doing exactly what the contract says it can do. See In Touch Concepts, 949 F. Supp. 2d at 468-69 (holding that plaintiff failed to state a claim for breach of

contract where breach was based on defendant's unfettered exercise of contractual right to terminate contract); Stokes v. Lusker, 08 Civ. 3667, 2009 WL 612336, at *7 (S.D.N.Y. Mar. 4, 2009) (dismissing plaintiffs' breach-of-contract claim based on retention of deposit where contract provided that defendants could keep the deposit for any reason if plaintiffs failed to close transaction), aff'd, 425 F. App'x 18 (2d Cir. 2011).

Moreover, the provision of the PSA the Depositor allegedly breached—Section 2.01—does not impose any duty whatsoever on the Depositor related to assisting the Trustee in litigation. As described above, Section 2.01 exclusively relates to the conveyance of certain specified mortgage documents at closing. For these reasons, the Trustee's claim for breach of contract against the Depositor must be dismissed.

## III. COUNTS II – IV ALSO SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE VIABLE CLAIMS

### A. The Failure to Notify Claims (Counts III and IV) Fail as a Matter of Law

Even if the Trustee could evade the Depositor consent requirement of Section 2.07, Counts III and IV of the Complaint still fail as a matter of law. Counts III and IV seek to impose liability on GSMC, the Sponsor, for "failure to notify," alleging that the Sponsor discovered loans that breach representations and warranties "before, during, and after the Trust Closing Date . . . but failed to give notice of any breach to the Trustee." Compl. ¶¶ 106, 113. These causes of action should be dismissed because the relevant agreements do not impose any notice obligation on the Sponsor, GSMC.

The Complaint alleges that the Sponsor's purported obligation to notify emanates from Section 2.07 of the PSA, which provides that "[u]pon discovery by any of the parties hereto of a breach of a representation or warranty . . . the party discovering such breach shall give prompt written notice thereof to the other parties to this Agreement." Compl. Ex. 1, § 2.07 (emphasis

added). GSMC, however, is not a party to the PSA, so Section 2.07's notice obligation does not apply to GSMC. See Compl. Ex. 1. There is no other provision in any of the transaction documents—and the Complaint does not allege any—that imposes any obligation on the Sponsor to notify the Trustee of loans that breach representations and warranties. Consequently, the Complaint's "failure to notify" allegations fail to state a claim upon which relief may be granted.

### B. Counts II and IV Should Also Be Dismissed Because the Trustee Is Bound By The Sole Remedy Provision[4]

The sophisticated parties to this transaction agreed that repurchase would be the "sole remedy" for any breach of loan-related representations and warranties. Under well-settled New York law, contractual limitations on remedies must be enforced according to their terms. And for good reason: "By disfavoring judicial upending of the balance struck at the conclusion of the parties' negotiations, [New York] public policy in favor of freedom of contract both promotes certainty and predictability and respects the autonomy of commercial parties in ordering their own business arrangements." 159 MP Corp. v. Redbridge Bedford, LLC, 33 N.Y.3d 353, 359-60 (2019).

The Trustee's Complaint nonetheless seeks to avoid that agreed-upon remedial protocol, alleging two counts (Counts II and IV) that demand unspecified contractual "damages" as an alternative to specific performance of the repurchase remedy. Its only basis for that relief is the allegation that GSMC's breaches are "pervasive" and that "Goldman Sachs was grossly negligent in its performance of (and failure to perform) its contractual obligations." Compl. ¶ 79. Those assertions provide no basis to relieve the Trustee from the remedial limitation to which it agreed.

---

4 Counts II and IV should be dismissed for the reasons set forth in Section I and III.A, supra, and if the Court agrees it need not reach the question of whether the relief sought in those Counts is also barred by the PSA's sole remedy provision.

The Court of Appeals has repeatedly made clear that allegations like these are insufficient to nullify the sole remedy provisions in RMBS contracts. Just last year, that Court held that a sole remedy provision cannot be "nullif[ied by allegations of] multiple, systemic breaches." Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 31 N.Y.3d 569, 582 (2018) (alteration in original); accord Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc., 30 N.Y.3d 572, 585-86 (2017).

In pleading claims that seek damages beyond the sole repurchase remedy, the Trustee presumably intends to rely on holdings from the Appellate Division, First Department, that allegations of "pervasive" breaches "sufficiently plead[] gross negligence to render the sole remedy clause … unenforceable." In re Part 60 Putback Litig., 169 A.D.3d 217, 225 (1st Dep't 2019) ("NC4"). But that case, and that issue, are now pending before the New York Court of Appeals after the First Department took the unusual step of granting leave to appeal from its own decision, likely recognizing that its holdings were questionable in light of the Court of Appeals' precedent. This Court is not bound by a holding of the Appellate Division where "persuasive data" indicates "that the highest court of the state would decide otherwise." DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005) (citations omitted). Here, the Appellate Division's holding is unsustainable in light of the Court of Appeals' clear precedent in Ambac and Nomura holding that sole remedy provisions contain the exclusive recourse for parties asserting claims grounded in breaches of representations and warranties.

In recognizing a sole remedy "exception" for gross negligence allegations, the First Department relied on the notion that "a party may not insulate itself from damages caused by 'grossly negligent conduct.'" See Morgan Stanley Mortg. Loan Tr. 2006-13 ARX v. Morgan Stanley Mortg. Capital Holdings, LLC, 143 A.D.3d 1, 8 (1st Dep't 2016) ("ARX") (quoting

Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 554 (1992)); NC4, 169 A.D.3d at 224-25 (adhering to ARX). But, as this Court has recognized, while the Court of Appeals has applied that principle to contracts that "'purport[] to exonerate a party from liability and clauses limiting damages to a nominal sum,'" "the sole remedy provisions [in RMBS contracts] do neither of those things." ACE Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 v. DB Structured Prods., Inc., 5 F. Supp. 3d 543, 555 (S.D.N.Y. 2014) (Nathan, J.) (quoting Sommer, 79 N.Y.2d at 554).

For these reasons, the Court of Appeals is likely to hold that allegations of gross negligence fail to displace settled New York law holding sophisticated parties to their remedial bargain. Thus, even if the Court holds that the Trustee may proceed on breach-of-contract claims against GSMC, the Court should dismiss counts that seek damages beyond the repurchase protocol (Counts II and IV).

## IV. THE TRUSTEE'S CLAIMS TO PUNITIVE DAMAGES AND ATTORNEYS' FEES FAIL

The Complaint's Prayer for Relief (Compl. at 33) requests an award of "the Trustee's costs and expenses, including reasonable attorneys' fees and expert fees," as well as punitive damages. Those forms of relief are unavailable as a matter of law. Here, too, the Trustee will likely rely on the First Department's holding in NC4 that such relief may be available in similar RMBS put-back actions, see 169 A.D.3d at 225, but the Court of Appeals will have the final word when it resolves that appeal. Because settled Court of Appeals precedent makes clear that punitive damages and attorneys' fees are unavailable on the claims and contractual language that the Trustee asserts here, this Court should strike those aspects of the requested relief.

**Punitive Damages**: Under New York law, punitive damages are generally unavailable on contract claims, and certainly unavailable in cases like this one where no public right is

implicated. "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." N.Y.U. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316 (1995). Here, no such tort exists. The Trustee has at most alleged loan breaches that are "pervasive" in nature, but as Ambac and Nomura make clear, such allegations do not exempt claims from a sole remedy provision, let alone transform breaches of contract into violations of an independent tort duty that can serve as a predicate for punitive damages. See Ambac, 31 N.Y.3d at 582; Nomura, 30 N.Y.3d at 585-86. Moreover, there is no claim here that Defendants' conduct goes beyond the level of culpability associated with most fraud cases, see Walker v. Sheldon, 10 N.Y.2d 401, 404-05 (1961), or is otherwise of an "egregious" nature, N.Y.U., 87 N.Y.2d at 316. The allegations in this Complaint fall far short of those that the First Department erroneously held to support punitive damages in NC4, where that court relied on the Securities and Exchange Commission's findings that the defendants had committed "fraud and deceit" on investors and the public in connection with the trust at issue. See 169 A.D.3d at 225-26.

**Attorneys' Fees**: The Trustee presumably bases its demand for attorneys' fees on the PSA's definition of the "Repurchase Price" payable by the Sponsor for the repurchase of a breaching Mortgage Loan, which includes the following:

> all expenses incurred by the Servicer, the Master Servicer, the Trust or the Trustee, as the case may be, in respect of a breach or defect, including, without limitation, expenses arising out of the Servicer's, the Master Servicer's or the Trustee's, as the case may be, enforcement of the Sponsor's repurchase obligations . . . .

Compl. Ex. 1 at 61. In NC4, the First Department held that a similar "Repurchase Price" definition allows claims for reimbursement of attorneys' fees. 169 A.D.3d at 219. That holding,

too, is on review in the Court of Appeals and will likely be reversed because it flouts that Court's well-established precedent.

New York law sets forth a bright-line test for obtaining attorneys' fees on a contract claim: "[A]ttorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." Hooper Assoc. Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491 (1989). In addressing indemnity for legal fees between contracting parties, New York courts strictly construe agreements in order "to avoid reading into [them] a duty which the parties did not intend to be assumed." Id. Thus, "court[s] should not infer a party's intention to waive the benefit of the [American] rule unless the intention to do so is unmistakably clear from the language of the promise." Id. at 492 (emphasis added).

Here, no provision of the PSA provides that Defendants will pay the Trustee's legal fees in litigation between the parties, and the PSA makes clear that the parties knew how to provide for the recovery of attorneys' fees when they so intended. The provision for Repurchase Price makes no mention of litigation, nor does it refer to attorneys' fees or expenses incurred in litigation between the parties. In other contexts, New York courts have long held that references to "costs" and "expenses" do not include attorneys' fees absent some explicit statement to that effect. See, e.g., Waverly Mews Corp. v. Waverly Stores Assocs., 294 A.D.2d 130, 132 (1st Dep't 2002). So even if the provision here could be read to cover attorneys' fees, it does not have to be read that way. Thus, the agreement does not reflect the unmistakably clear intent that Hooper requires.[5]

---

[5] Before the First Department's holding in NC4, trial courts addressing this issue regularly held, on identical facts, that attorneys' fees were not recoverable. See e.g., U.S. Bank Nat'l Ass'n (CSMC 2007-NC1) v. DLJ Mortg. Capital, Inc., 2015 N.Y. Slip. Op. 30084 (N.Y. Sup. Ct.

## CONCLUSION

For the reasons and upon the authorities stated above, the Court should grant Defendants' motion to dismiss in its entirety.

Dated: New York, New York
September 23, 2019

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Richard A. Jacobsen

Richard A. Jacobsen
Thomas N. Kidera
Daniel A. Rubens
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000
rjacobsen@orrick.com
tkidera@orrick.com
drubens@orrick.com

*Attorneys for Defendants Goldman Sachs Mortgage Company, L.P. and GS Mortgage Securities Corp.*

---

Jan. 16, 2015); U.S. Bank Nat'l Ass'n (HEAT 2007-3) v. DLJ Mortg. Capital, Inc., 2014 N.Y. Slip Op. 31055 (N.Y. Sup. Ct. Apr. 21, 2014); ACE Sec. Corp. Home Equity Loan Tr., Series 2007-ASAP2 v. DB Structured Prods., Inc., 2014 N.Y. Slip. Op. 32451 (N.Y. Sup. Ct. Aug. 28, 2014); SACO I Tr. 2006-5 v. EMC Mortg. LLC, 2014 N.Y. Slip. Op. 31432 (N.Y. Sup. Ct. May 29, 2014).