# Exhibit A

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT

**In the matter of GSAMP Trust 2007-HE1**

Case Type: Other
File No. 62-TR-CV-19-15

**PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR INSTRUCTIONS IN THE ADMINISTRATION OF TRUST PURSUANT TO MINN. STAT. § 501C.0201 *et seq.***

TO THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT:

1. Petitioner U.S. Bank National Association ("**U.S. Bank**" or "**Petitioner**"), solely in its capacity as trustee (in such capacity, the "**Trustee**") for GSAMP Trust 2007-HE1 (the "**Trust**"), files this petition (the "**Petition**") pursuant to Minn. Stat. § 501C.0201 *et seq.* seeking Court instruction regarding administration of the Trust. As more fully described below, the Trustee was directed and indemnified by a certain Certificate Owner (the "**Directing Holder**") to commence an action (the "**Putback Action**") against the Depositor and the Sponsor (each as defined below and together, the "**Defendants**") by filing a summons with notice in New York state court to assert claims related to alleged breaches of the representations and warranties made by the Sponsor with respect to the Mortgage Loans conveyed to the Trust (the "**Asserted Claims**"). The Defendants have removed the Putback Action to the United States District Court for the Southern District of New York (the "**Federal Court**"). As of the filing of this Petition, the Directing Holder has not provided a satisfactory direction or indemnity to the Trustee pursuant to the terms of the PSA (as defined below) with respect to the further prosecution of Asserted Claims and the Putback Action and no other Certificateholder has come forward to provide a direction and indemnity to the Trustee. The Trustee is now filing this Petition to, among other things, seek Court approval of

certain actions already taken or to be taken by the Trustee with respect to the Asserted Claims and the Putback Action during the pendency of this proceeding, and seek further instruction from the Court with respect to the Putback Action and the use of the moneys in the Trust Fund in connection therewith, and other relief related thereto.

## Jurisdiction and Venue

2. The Petitioner serves as successor Trustee under a Pooling and Servicing Agreement dated as of February 1, 2007 (the "**PSA**"),[1] by and among GS Mortgage Securities Corp., as Depositor ("**GSMS**" or "**Depositor**"), Avelo Mortgage, LLC, as Servicer, U.S. Bank National Association and Deutsche Bank National Trust Company, as Custodians, LaSalle Bank National Association, as the original trustee, and Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator. (A true and correct copy of the PSA, exclusive of the exhibits, is attached hereto as **Exhibit 1**.)

3. The Trustee is a national banking association, has its principal corporate trust office in St. Paul, Minnesota, and performs functions of Trust administration in Minnesota. There is jurisdiction over this Petition under Minn. Stat. §§ 501C.0202(1) and (24) in that the Trustee is seeking instruction from this Court confirming the actions taken by the Trustee and instructing the Trustee regarding the administration of the Trust and discharge of the Trustee's duties under the agreement(s) governing the Trust.

4. This Petition is properly venued in this Court pursuant to Minn. Stat. § 501C.0207(a)(2)(i) because the Trustee has a corporate trust office in St. Paul, Minnesota.

[1] Capitalized terms used and not otherwise defined in this Petition shall have the meanings given to such terms in the PSA.

5. Petitioner requests that the Court take jurisdiction in this matter as a proceeding *in rem*.

**Background**

6. Goldman Sachs Mortgage Company ("**GSMC**" or "**Sponsor**") purchased or otherwise acquired Mortgage Loans from certain loan originators or sellers pursuant to various agreements, including the "Purchase Agreements" as defined in the PSA and additional Purchase Agreements that are separately defined and referenced in the Representations and Warranties Agreement (the "**RWA**"). (A true and correct copy of the RWA is attached hereto as **Exhibit 2**.) The Sponsor subsequently sold or assigned the Mortgage Loans to the Depositor pursuant to various instruments and agreements, including the Bill of Sale referenced in the RWA and the Assignment Agreements referenced and defined in the PSA. The PSA, the RWA, the Bill of Sale, Assignment Agreements, and other documents relating to or governing the Trust are collectively referred to herein as the "**Governing Documents**."

7. In the RWA and Assignment Agreements the Sponsor made various representations and warranties regarding the Mortgage Loans (the "**R&Ws**") and agreed that in the event of a breach of the R&Ws it would cure such breaches or repurchase breaching Mortgage Loans from the Trust subject to the terms and conditions set forth in the RWA and the Assignment Agreements.

8. Pursuant to the PSA, including Section 2.01 thereof, the Depositor conveyed and assigned to the Trustee for the benefit of the Certificateholders all right, title and interest of the Depositor in and to the Trust Fund including, without limitation, the Mortgage Loans and certain related rights, including rights under the RWA and Assignment Agreements.[2] Exhibit 1, § 2.01(a)

[2] The Trustee notes that in the Assignment Agreements the Sponsor made R&Ws to and for the benefit of the Trust and specifically acknowledged and agreed that the Assignment

at p. 67 and the definition of "Trust Fund" at p. 65. The Trust Fund constitutes the corpus of the Trust created pursuant to the PSA. As more specifically set forth in the PSA, including Sections 2.01 and 2.02 and related definitions, the Depositor assigned and conveyed to the Trustee certain rights with respect to the Mortgage Loans, including the right to enforce the R&Ws made by the Sponsor in the RWA and Assignment Agreements, and the Trustee is authorized to enforce those rights for the benefit of the Trust and the Certificateholders as set forth in the PSA and the other Governing Documents. *See generally* Exhibit 1, §§ 2.01, 2.02, 2.07, and related definitions.

9. Section 2.01(b) of the PSA provides, among other things, that the Depositor, who is affiliated with the Sponsor, is obligated to "use reasonable efforts to assist the Trustee in enforcing the obligations of the Sponsor under the applicable Assignment Agreement and the Representations and Warranties Agreement." Exhibit 1, § 2.01(b) at p. 69. Section 2.07 of the PSA further provides that in the event of a breach of the R&Ws, the Trustee "shall take such action, with the Depositor's consent, with respect to such breach under the applicable Assignment Agreement or the Representations and Warranties Agreement, as applicable, as may be necessary or appropriate to enforce the rights of the Trust with respect thereto" and, in such event, the legal expenses and costs of such action and any resulting liabilities shall constitute expenses, costs and liabilities of the Trust Fund and the Trustee is entitled to be reimbursed out of the Collection Account. Exhibit 1, § 2.07 at p. 77.

---

Agreements would inure to the benefit of the Trust and the Trustee acting on behalf of the Trust. See, e.g., Assignment, Assumption and Recognition Agreement dated February 23, 2007, among the Sponsor, as assignor, the Depositor, as assignee, and Aames Capital Corporation, attached as Exhibit 3 to this Petition.

**Repurchase Demand and Putback Action**

10. On December 21, 2018, counsel representing the Directing Holder delivered a written notice (the "**Breach Notice**") to the Trustee indicating, among other things, that the Directing Holder had identified breaches of one or more of the R&Ws made by the Sponsor with respect to certain Mortgage Loans conveyed to the Trust and requested that the Trustee immediately notify the Sponsor and certain other parties of such breaches and request that the Sponsor promptly cure such breaches or repurchase breaching Mortgage Loans from the Trust pursuant to the terms of the applicable Governing Documents. The Breach Notice further indicated that the Directing Holder's investigation of the Mortgage Loans was ongoing and that the Directing Holder believed that further investigation would reveal substantial additional evidence of breaches in the Trust's mortgage pool beyond those alleged in the Breach Notice.

11. Based on the request made by the Directing Holder and its counsel, and based solely on the information provided in the Breach Notice, by letter dated December 21, 2018 (the "**Demand Letter**"), the Trustee notified the Sponsor, the Depositor, and certain other relevant parties of alleged breaches and demanded, among other things, that the Sponsor cure breaches or repurchase the affected Mortgage Loans from the Trust. To date, the Sponsor has not cured breaches or repurchased any Mortgage Loans from the Trust in response to the Demand Letter.

12. By notice dated January 11, 2019 (the "**January 2019 Notice**"), the Trustee notified all Certificateholders of the Breach Notice and the Demand Letter and invited Certificateholders interested in directing the Trustee's actions to contact the Trustee. In the January 2019 Notice the Trustee specifically indicated that unless directed and indemnified by Certificateholders in accordance with the PSA, the Trustee was not obligated to and did not intend to pursue any further action with respect to the alleged breaches identified in the Breach Notice

and the Demand Letter. (A true and correct copy of the January 2019 Notice is attached hereto as **Exhibit 4**.)

13. Pursuant to a written direction and indemnity agreement dated February 11, 2019 (the "**D&I**"), the Directing Holder directed and indemnified the Trustee to, among other things, retain McKool Smith, P.C., as the Trust's litigation counsel (the "**Special Litigation Counsel**") and cause the Special Litigation Counsel to prepare and file a summons with notice (the "**Summons with Notice**") to commence the Putback Action. The Trustee accepted the directions and indemnity provided by the Directing Holder pursuant to the D&I and, on February 15, 2019, the Special Litigation Counsel commenced the Putback Action by filing the Summons with Notice in the New York Supreme Court, County of New York (Index No. 650992/2019), naming the Sponsor and the Depositor as Defendants. (A true and correct copy of the Summons with Notice is attached hereto as **Exhibit 5**.) The Summons with Notice asserts that, according to the investigation done by a Certificateholder, at least 617 of the approximately 3,625 Mortgage Loans in the Trust breach applicable Mortgage Warranties (as defined in the Summons with Notice).

14. Pursuant to the D&I, the Directing Holder further directed and indemnified the Trustee to send a letter to the Depositor in the form recommended by the Special Litigation Counsel and agreed to by the Directing Holder and its counsel (the "**Consent Letter**") indicating that to the extent the Depositor's consent was determined to be required pursuant to Section 2.07 of the PSA to enforce the Trust's rights with respect to the alleged breaches of the R&Ws by the Sponsor, the Depositor was requested to specifically confirm its consent to the filing of the Summons with Notice no later than 12 p.m. (ET) on February 15, 2019 (the "**Response Deadline**"). The Consent Letter delivered also indicated that to the extent the Depositor failed to respond by the Response Deadline, the Trustee would deem such silence to constitute a

confirmation of the Depositor's consent to the Trustee's filing of the Summons with Notice. (A true and correct copy of the Consent Letter sent by the Trustee to the Depositor on February 13, 2019, is attached hereto as **Exhibit 6**.) The Trustee has not received any response from the Depositor with respect to the Consent Letter. The Consent Letter also specifically indicated that by making this request, the Trustee did not concede that the Depositor's express consent was required.

15. By notice dated March 1, 2019 (the "**March 2019 Notice**"), the Trustee notified Certificateholders of the filing of the Summons with Notice and indicated that although the Directing Holder had directed and indemnified the Trustee to file the Summons with Notice, it had not agreed to fund the prosecution of the Putback Action any further. In the March 2019 Notice the Trustee once again invited any Certificateholders interested in directing and indemnifying the Trustee's actions to contact the Trustee. The March 2019 Notice specifically indicated that the Trustee "might not proceed with the filing of a complaint and the prosecution of the Putback Action unless it is directed and indemnified to do so by Certificateholders in accordance with the terms of the PSA." (A true and correct copy of the March 2019 Notice is attached hereto as **Exhibit 7**.) In response to the notices sent by the Trustee, the Trustee received communications from other Certificateholders but, to date, no Certificateholder has indicated that it is prepared to provide a satisfactory direction and indemnity to the Trustee to continue prosecuting the Putback Action, nor has any Certificateholder expressed opposition to the Putback Action being prosecuted through use of Trust assets. The Trustee and the Directing Holder have engaged in further negotiations regarding a direction and indemnity for the continued prosecution of the Putback Action but, as of this filing, the Trustee has not received a satisfactory direction and indemnity from the Directing Holder to continue prosecuting the Putback Action. Although the Directing Holder has not

provided a satisfactory direction and indemnity to the Trustee for the continued prosecution of the Putback Action, it has indicated that it supports the Trustee continuing the prosecution of the Putback Action and the use of the moneys available from the Trust Fund (including the Collection Account) in connection therewith.

16. On March 14, 2019, the Defendants removed the Putback Action to Federal Court. As of the date of this Petition, the Trustee has not yet filed a complaint in Federal Court but intends to preserve the viability of the Asserted Claims and the Putback Action during the pendency of this proceeding. In this Petition, the Trustee is seeking, among other things, Court approval of the actions taken (or not taken) by the Trustee directly or indirectly through its counsel, including the Special Litigation Counsel, to preserve the Asserted Claims and the Putback Action during the pendency of this proceeding and the use of the moneys available from the Trust Fund (including the Collection Account) for payment or reimbursement of any fees, expenses, advances, disbursements or other liabilities incurred in connection therewith. As more fully described below, the Trustee also seeks instruction with respect to the continued prosecution or dismissal of the Putback Action.

**Instruction Needed with Respect to Prosecution of Putback Action**

17. In this Petition, the Trustee is also seeking Court instruction whether the Trustee should continue to prosecute the Asserted Claims and the Putback Action. If the Court directs the Trustee to continue prosecuting the Putback Action, the Trustee is also seeking specific instruction to use the moneys from the Trust Fund (including moneys deposited from time to time in the Collection Account) for payment of any fees, costs, expenses, or liabilities incurred by the Trustee in connection therewith. In the alternative, if the Court does not instruct the Trustee to continue prosecuting the Putback Action and to use Trust funds to do so, the Trustee then requests that the Court instruct the Trustee to dismiss the Putback Action.

18. Pursuant to the terms of the PSA, including Section 8.02(f) thereof, the Trustee is not required to "risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties or in the exercise of any of its rights or powers [under the PSA] if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not assured to it." Exhibit 1, § 8.02(f) at p. 135. To date, no Certificateholder has offered to direct and indemnify the Trustee to continue prosecuting the Asserted Claims and the Putback Action on terms reasonably satisfactory to the Trustee in accordance with the PSA. Accordingly, if the Trustee were to proceed with the prosecution of the Putback Action without an appropriate direction and indemnity from Certificateholders, it needs to receive reasonable assurance and confirmation that all fees, costs, expenses or liabilities incurred in connection therewith will be paid or reimbursed from the Trust Fund (including the Collection Account). The Trustee anticipates that prosecution of the Putback Action would be expensive. Based on its previous experience prosecuting such actions, the Trustee anticipates that such expense, including attorneys' fees, expert witness fees and all of the associated litigation expense, would total millions of dollars.

19. Section 8.05 of the PSA provides, in relevant part, that the Trustee shall be indemnified by the Trust Fund and held harmless against any loss, liability, or expense (including reasonable attorneys' fees) incurred in connection with any claim or legal action relating to the PSA or the Certificates, subject to the additional terms set forth therein. Exhibit 1, § 8.05 at p. 136. Section 8.05 further provides that without limiting the foregoing, the Trust Fund is obligated to pay or reimburse the Trustee for all reasonable expenses, disbursements, and advances incurred or made by the Trustee in accordance with the PSA with respect to the reasonable compensation and expenses of its counsel and certain other agents not regularly employed by the Trustee, subject to

the additional terms set forth therein. Id. at pp. 136-137. Section 8.05 of the PSA also indicates that the Trustee is not entitled to payment or reimbursement for any "routine ongoing expenses" incurred by the Trustee in the ordinary course, and that no expense shall be reimbursed by the Trust Fund under the PSA if it would not constitute an "unanticipated expense incurred by the REMIC" within the meaning of the REMIC Provisions. Id. at p. 137.

20. Although Section 8.05 of the PSA generally contains broad indemnification, payment and reimbursement rights in favor of the Trustee from the Trust Fund, the Trustee does not have direct access to the Trust's cash flow and any indemnification, payment or reimbursement amounts owed to the Trustee must come out of the Collection Account which, pursuant to the terms of the PSA, is an account held by the Servicer. More specifically, as indicated in Sections 3.10 and 3.27 of the PSA, the Trustee does not hold or directly control the Collection Account into which all payments and collections received with respect to the Mortgage Loans are deposited, nor does the Trustee hold or control the Distribution Account into which funds are deposited for further distribution to Certificateholders. See Exhibit 1, § 3.10 at p. 85 and § 3.27(b) at p. 102. Section 3.10 of the PSA requires the Servicer to establish and maintain the Collection Account, to be held in trust for the benefit of the Trustee for the benefit of the Certificateholders. Id. Section 3.11(a)(viii) of the PSA further provides that the Servicer is obligated to make withdrawals from the Certificate Account to, among other things, reimburse the Trustee for expenses incurred by or reimbursable to it pursuant to Section 8.05. Id. at § 3.11 at p. 87. Thus, any indemnification, payment or reimbursement amounts payable to the Trustee from the Trust Fund must come out of the Collection Account, which is held and controlled by the Servicer, and the Trustee is necessarily dependent on the actions of the Servicer in effectuating such payments or reimbursements to the Trustee.

21. As set forth in paragraph 9 above, Section 2.07 of the PSA can be read to suggest that the Trustee's enforcement of the rights of the Trust with respect to the breaches of the R&Ws under the applicable Assignment Agreement or RWA may be subject to the consent of the Depositor. As indicated above, the Depositor is an affiliate of the Sponsor that made those R&Ws and both the Depositor and the Sponsor are named as Defendants in the Putback Action. Section 2.01 of the PSA provides that the Depositor assigned and conveyed to the Trustee all right, title and interest of the Depositor in and to the Trust Fund, including rights under the Assignment Agreements and RWA, and is obligated to "use reasonable efforts to assist the Trustee in enforcing the obligations of the Sponsor under the applicable Assignment Agreement and the Representations and Warranties Agreement." Section 2.07 goes on to state that "[i]n such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities of the Trust Fund, and the Trustee shall be entitled to be reimbursed therefor out of the Collection Account." As described further above, the Trustee, acting at the direction of the Directing Holder, sent the Consent Letter to the Depositor indicating that to the extent the Depositor's consent was required pursuant to Section 2.07 of the PSA, the Depositor was requested to specifically confirm its consent to the filing of the Summons with Notice by the Response Deadline set forth therein. The Consent Letter, which was delivered pursuant to the D&I, further indicated that to the extent the Depositor failed to respond by the Response Deadline, the Trustee would deem such silence to constitute a confirmation of the Depositor's consent to the Trustee's filing of the Summons with Notice. In this Petition, the Trustee is seeking instruction that under these circumstances, the Trustee is directed to prosecute the Asserted Claims and the Putback Action and is entitled to be indemnified, paid and reimbursed from the Trust Fund (including, without limitation, the Collection Account) for any fees, costs, expenses or liabilities incurred by

the Trustee (including, without limitation, attorneys' fees) in connection therewith pursuant to the terms of the PSA including, without limitation, Sections 2.07, 3.11 and 8.05 thereof. The Trustee is also seeking Court instruction confirming that during the pendency of the Putback Action the Trustee may provide periodic updates to Certificateholders by issuing notices with respect to significant developments in the Putback Action and may (but shall not be obligated to) seek further instruction from the Court or from the requisite percentage of Certificateholders as deemed appropriate or necessary by the Trustee.

22. The Trustee notes that pursuant to the terms of the D&I, the Directing Holder deposited funds into an indemnity account established and held by the Trustee, which funds have been used or may be used to pay, among other things, the fees and expenses incurred by the Trustee in connection with the filing of the Summons with Notice and certain indemnities owed by the Directing Holder to the Trustee pursuant to the terms thereof (the "**Holder Paid Expenses**"). To the extent that the Court enters an order directing the Trustee to continue prosecution of the Putback Action and use moneys available from the Trust Fund, including moneys deposited from time to time in the Collection Account, for payment of fees, costs and expenses incurred by the Trustee in connection therewith, the Trustee expects to seek reimbursement from the Trust Fund (including the Collection Account) for the Holder Paid Expenses (to the extent funds are available in the Collection Account after payment of all other fees and expenses incurred by the Trustee), which amounts may be re-deposited into the indemnity account to replenish it pursuant to the terms of the D&I and may ultimately be returned to the Directing Holder subject to the express terms and conditions set forth in the D&I.

23. In the event that the Court does not instruct the Trustee to continue to prosecute the Asserted Claims and the Putback Action as requested in this Petition and to use Trust funds to do

so, the Trustee is seeking Court instruction directing the Trustee to dismiss the Putback Action and finding that the Trustee shall incur no liability in connection with such dismissal.

**Trustee Exculpation**

24. Section 8.01(c) of the PSA provides that the Trustee is not liable with respect to any action taken or omitted to be taken by it in good faith "in accordance with the direction of the Holders of Certificates evidencing not less than 25% of the Voting Rights relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under [the PSA]." Exhibit 1, § 8.01(c) at p. 134. As indicated earlier, the Trustee has sent periodic notices to Certificateholders to inform them of the Breach Notice, the Demand Letter, and the filing of the Summons with Notice. Although to date no Certificateholder has agreed to provide a satisfactory direction and indemnity to the Trustee for the further prosecution of the Putback Action in accordance with the PSA, the Trustee has not received negative views from any Certificateholders expressing an objection to the Trustee's continued prosecution of the Putback Action on its own or the use of the moneys available from the Trust Fund (including the Collection Account) in connection therewith. To the contrary, the Directing Holder has indicated that it supports the Trustee's continued prosecution of the Putback Action and the use of the moneys available from the Trust Fund. Further, another Certificateholder who contacted the Trustee in response to the notices sent by the Trustee did not express any opposition to the Trustee's continued prosecution of the Putback Action or the use of the moneys in the Trust Fund for that purpose. At this time, however, the Trustee does not know whether continued prosecution of the Putback Action using moneys available from the Trust Fund (including the Collection Account) is supported by Certificateholders controlling at least 25% of the Voting Rights.

25. If the Court grants the relief sought in this Petition and enters an order directing the Trustee to proceed with the prosecution of the Putback Action using moneys available from the Trust Fund (including the Collection Account), the Trustee is also seeking confirmation from the Court that the Trustee shall have acted in good faith in following such order and shall incur no liability under the PSA (including Section 8.01(c)) or the other Governing Documents in having done so. Alternatively, to the extent the Court declines to provide the requested direction for the Trustee to continue prosecuting the Asserted Claims and the Putback Action and use the moneys available from the Trust Fund for payment of fees, costs, expenses and liabilities incurred in connection therewith, and instead directs the Trustee to dismiss the Putback Action, the Trustee is seeking confirmation that the Trustee shall have acted in good faith in following such order and shall incur no liability under the PSA (including Section 8.01(c)) or the other Governing Documents in having dismissed the Putback Action pursuant to the order of the Court.

**Request for Relief**

**WHEREFORE**, pursuant to the provisions of Minn. Stat. §§ 501C.0201 *et seq.* and all other applicable law, the Trustee respectfully requests that this Court:

a. Take jurisdiction in this matter as a proceeding *in rem* and make and enter herein an order (the "Order for Hearing") designating the time and place when the respective parties-in-interest may be heard upon the matters set forth in this Petition, and directing that notice of the hearing be served in the manner specified in the accompanying Order for Hearing and as provided by Minn. Stat. § 501C.0203, subd. 1;

b. Undertake to represent all parties in interest who are unascertained or not in being, or who are minors or incapacitated, pursuant to the provisions of Minn. Stat. § 501C.0305;

c. At such designated time and place, conduct a hearing and enter an order:

(i) Finding that (a) the Trustee is directed to continue prosecution of the Asserted Claims and the Putback Action and is entitled to be indemnified, paid and reimbursed from the Trust Fund (including, without limitation, the Collection Account) for any fees, costs, expenses or liabilities incurred by the Trustee (including, without limitation, attorneys' fees) in connection therewith pursuant to the terms of the PSA including, without limitation, Sections 2.07, 3.11 and 8.05 thereof, (b) the Trustee may, during the pendency of the Putback Action, provide periodic updates to Certificateholders by issuing notices with respect to significant developments in the Putback Action and may (but shall not be obligated to) seek further instruction from the Court or from the requisite percentage of Certificateholders as deemed appropriate or necessary by the Trustee, and (c) the Trustee may seek reimbursement from the Trust Fund (including the Collection Account) for the Holder Paid Expenses, which amounts may be re-deposited into the indemnity account pursuant to the terms of the D&I.

(ii) In the alternative, if the preceding request for relief in paragraph c.(i) is not granted, directing that the Trustee dismiss the Putback Action;

(iii) Approving all actions taken (or not taken) by the Trustee, directly or indirectly through its counsel, including the Special Litigation Counsel, to preserve the Asserted Claims and the Putback Action during the pendency of this proceeding, and specifically approving the use of the moneys available from the Trust Fund (including the Collection Account) for payment or reimbursement of

any fees, expenses, advances, disbursements or other liabilities incurred by the Trustee in connection with such actions;

(iv) Determining that such order shall be binding on the Trustee, the Trust, the Depositor, all parties involved in the administration of the Trust including, without limitation, the Servicer and any subservicers, and all persons or entities claiming a beneficial or ownership interest in the Trust including, without limitation, all past, present or future Certificateholders, and their respective successors or assigns, as well as any other parties-in-interest, if any;

(v) Finding that all actions taken or to be taken (or not taken) by the Trustee in connection with this Court's instruction in this proceeding have been, are and will be in good faith and comply with all applicable standards of care and duties of the Trustee under, and are fully authorized and protected by, the PSA and other Governing Documents including, without limitation, Section 8.01(c) of the PSA and applicable law, and shall not subject U.S. Bank, individually or as Trustee, to liability;

(vi) Directing that the Trust and the Trustee shall not be subject to the continuing supervision of the Court for the purposes of Minn. Stat. §§ 501C.0201(c)(2), 501C.0205(b) or General Rule of Practice 417.02; and

(vii) Granting such other and further relief as the Court may deem lawful, just and proper.

Dated: May 3, 2019

**MASLON LLP**

By: _*/s Michael C. McCarthy*______
Michael C. McCarthy (#230406)
Ana Chilingarishvili (#0391057)
90 South Seventh Street, Suite 3300
Minneapolis, MN 55402
Telephone: 612-672-8200
Facsimile: 612-672-8300
E-mail: mike.mccarthy@maslon.com
ana.chilingarishvili@maslon.com

**ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be imposed under Minn. Stat. § 549.211.

**MASLON LLP**

*/s Michael C. McCarthy*__________