# Exhibit B

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT

**In the matter of GSAMP Trust 2007-HE1**

Case Type: Civil Other
File No. 62-TR-CV-19-15

# ORDER

This matter came on for hearing before the undersigned on June 17, 2019, on the petition (the "Petition") filed by U.S. Bank National Association ("U.S. Bank" or the "Trustee"), solely in its capacity as Trustee of the GSAMP Trust 2007-HE1 (the "Trust"). AWC Fund LLC ("AWC," "Respondent," or the "Directing Holder"), a holder of certificates issued by the Trust, responded to the Petition. A response was filed by HBK Master Fund L.P. but was withdrawn prior to the hearing.

Michael C. McCarthy of Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, Minnesota, appeared on behalf of the Trustee. John B. Orenstein of Greene Espel PLLP, 222 South 9th Street, Suite 2200, Minneapolis, Minnesota, appeared on behalf of AWC. There were no other appearances in this matter.

This court, based upon all of the papers, filings, records, and proceedings herein and due and timely notice having been given to the Trust beneficiaries and other potentially interested parties, and having been fully advised as to the facts and issues involved herein, hereby finds, directs, and orders as follows:

1. The Trust was created pursuant to a Pooling and Servicing Agreement dated as of February 1, 2007 (the "PSA"), by and among GS Mortgage Securities Corp., as Depositor ("GSMS" or "Depositor"); Avelo Mortgage, L.L.C., as Servicer; U.S. Bank, as Custodian; Deutsche Bank National Trust Company, as Custodian; LaSalle Bank National Association (predecessor to U.S. Bank), as Trustee; and Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator. The

PSA and all other agreements governing or related to the Trust are collectively referenced in this Order as the "Governing Documents." All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to such terms in the PSA or in the Petition, as applicable.

2. This court has *in rem* jurisdiction over the Petition pursuant to Minn. Stat. §§ 501C.0201(c), 501C.0202(1) and (24) because the Trustee is seeking instruction from this court confirming the actions taken by the Trustee and instructing the Trustee regarding the administration of the Trust and discharge of the Trustee's duties under the agreement(s) governing the Trust. The Trustee's principal corporate trust office is located in St. Paul, Minnesota, and the Trustee performs functions of Trust administration in Minnesota.

3. The Petition is properly venued in this court pursuant to Minn. Stat. § 501C.0207(a)(2)(i).

4. The Trustee has fully complied with all of the notice and publication requirements set forth in Minn. Stat. § 501C.0203 subd. 1, as reflected in the affidavits of mailing and publication filed with the court.

5. The Trust is a residential mortgage-backed securitization ("RMBS") trust which was originally backed by over 3,000 Mortgage Loans. The Mortgage Loans were purchased or otherwise acquired from certain loan originators or sellers by Goldman Sachs Mortgage Company ("GSMC" or the "Sponsor"). The Sponsor subsequently sold or assigned the Mortgage Loans to the Depositor pursuant to various instruments and agreements, including assignment agreements (the "Assignment Agreements") and a Representations and Warranties Agreement ("RWA"). The Prospectus Supplement discloses that the Depositor "is a wholly-owned subsidiary of the sponsor, GSMC, and is an affiliate, through common parent ownership, of the underwriter, the swap provider, the cap provider and the servicer."

6. In the RWA and Assignment Agreements the Sponsor made various representations

and warranties regarding the Mortgage Loans (the "R&Ws") and agreed that in the event of a breach of the R&Ws it would cure such breaches or repurchase breaching Mortgage Loans from the Trust subject to the terms and conditions in the RWA and the Assignment Agreements.

7. Pursuant to the PSA, including Section 2.01 thereof, the Depositor conveyed and assigned to the Trustee for the benefit of the Certificateholders all right, title and interest of the Depositor in and to the Trust Fund including, without limitation, the Mortgage Loans and certain related rights, including rights under the RWA and Assignment Agreements. The Trust Fund constitutes the corpus of the Trust created pursuant to the PSA. As more specifically set forth in the PSA, the Depositor assigned and conveyed to the Trustee certain rights with respect to the Mortgage Loans, including the right to enforce the R&Ws made by the Sponsor in the RWA and Assignment Agreements, and the Trustee is authorized to enforce those rights for the benefit of the Trust as set forth in the PSA and other related documents.

8. The PSA provides at Section 2.07:

> The Trustee shall take such action, with the Depositor's consent, with respect to such breach under the applicable Assignment Agreement or the Representations and Warranties Agreement, as applicable, as may be necessary or appropriate to enforce the rights of the Trust with respect thereto. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities of the Trust Fund, and the Trustee shall be entitled to be reimbursed therefor out of the Collection Account.

9. On December 21, 2018, counsel for AWC delivered a written notice (the "Breach Notice") to the Trustee indicating, among other things, that AWC had identified breaches of one or more of the R&Ws with respect to certain Mortgage Loans and that further investigation would reveal substantial additional evidence of breaches in the Trust's mortgage pool, and requested that the Trustee immediately notify the Sponsor and certain other parties of such breaches and request that the Sponsor promptly cure such breaches or repurchase breaching Mortgage Loans from the Trust pursuant to the terms of the applicable Governing Documents. Based on the information provided

in the Breach Notice, the Trustee on that same date sent a letter (the "Demand Letter") to the Sponsor, the Depositor, and other parties, in which the Trustee demanded that the Sponsor cure breaches or repurchase the affected Mortgage Loans from the Trust. The Sponsor has not cured breaches or repurchased any Mortgage Loans from the Trust in response to the Demand Letter. The Trustee in a notice dated January 11, 2019 notified all Certificateholders of the Breach Notice and Demand Letter and invited Certificateholders interested in directing the Trustee's actions to contact the Trustee.

10. AWC provided a direction and indemnity ("D&I") to the Trustee directing and indemnifying it to retain McKool Smith, P.C. as the Trust's litigation counsel ("Litigation Counsel") and cause the Litigation Counsel to prepare and file a Summons with Notice ("SWN") to commence litigation against the Depositor and the Sponsor based on breaches of R&Ws. A Summons with Notice is a pleading under New York procedure that requires, in addition to the summons, "a notice stating the nature of the action and the relief sought…." N.Y.C.P.L.R. 305(b). It is not required to be served for 120 days after filing. *Id.* § 306-b.

11. Pursuant to the D&I, AWC deposited funds into an indemnity account established and held by the Trustee (the "Indemnity Account").

12. On February 13, 2019, acting pursuant to the D&I from AWC, the Trustee sent a letter to the Depositor indicating that: (i) pursuant to Section 2.01 of the PSA, the Depositor was obligated to "use reasonable efforts to assist the Trustee in enforcing the obligations of the Sponsor under the applicable Assignment Agreement and the Representations and Warranties Agreement" and (ii) to the extent the Depositor's consent was determined to be required pursuant to Section 2.07 of the PSA to enforce the Trust's rights with respect to the alleged breaches of R&Ws by the Sponsor, the Depositor was requested to confirm its consent to the filing of the SWN by 12 p.m. (ET) on February 15 (the "Consent Letter"). The Consent Letter advised the Depositor that if it failed to respond by the deadline, the Trustee would deem such silence to constitute a confirmation of its

consent. The Depositor did not respond to the Consent Letter.

13. On February 15, 2019, the Trustee filed the SWN in New York Supreme Court, thereby commencing an action titled *U.S. Bank National Association, as Trustee for GSAMP Trust 2007-HE1 v. Goldman Sachs Mortgage Company and GS Mortgage Securities Corp.*, Index No. 650992/2019 (the "Putback Action"). The Trustee notified Certificateholders of the filing by notice dated March 1, 2019. On March 14, 2019, GSMC and GSMS removed the Putback Action to the United States District Court for the Southern District of New York (Case No. 1:19-cv-02307-AJN).

14. The Trustee filed the Petition on May 3, 2019. In the Petition, the Trustee noted that it had not reached an agreement with the Directing Holder concerning a further direction and indemnity for the continued prosecution of the Putback Action. The Petition also noted that while the Trustee had not received a satisfactory direction and indemnity from any other Certificateholder to proceed with the Putback Action, the Trustee had received communications from other Certificateholders, and none had opposed the continued prosecution of the Putback Action through the use of Trust assets. The Petition requested authority for the Trustee to proceed with the prosecution of the Putback Action using Trust funds, and alternatively, should authorization to proceed be denied, authority to withdraw the Putback Action, and certain other relief related thereto.

15. Pursuant to this court's Order for Hearing, the Trustee provided notice to Certificateholders of this proceeding, including a copy of the Order for Hearing and the Petition (not including exhibits).

16. On May 17, by stipulation of the parties, the court in the Putback Action ordered the Trustee to serve a complaint in the Putback Action by the later of June 28, 2019 or five business days after the resolution of this proceeding. An initial pretrial conference in the Putback Action is scheduled for August 9.

17. On May 22, 2019, the Depositor sent a letter to the Trustee stating as follows:

> We understand that [the Trustee], in its capacity as Trustee for the GSAMP Trusts, has filed Petitions (the "Petitions") in Minnesota Trust Instruction Proceedings seeking the Court's approval to prosecute putback claims (the "Putback Actions") concerning the GSMAP [sic] Trusts using funds from the Trusts' Collection Accounts. . . .Section 2.07 of the [PSAs] states that the Trustee cannot prosecute the Putback Actions using funds from the Collection Accounts without the Depositor's consent. The Depositor hereby states, unequivocally, that it does not consent to the use of Collection Account funds to prosecute the Putback Actions. Please notify the court presiding over the Trust Instruction Proceedings and all relevant Certificateholders immediately.

The Trustee forwarded the Depositor's letter to Certificateholders in a notice dated May 28, 2019.

18. The Depositor did not file a response to the Petition, nor did it appear in this proceeding.

19. As indicated above, the Prospectus Supplement that accompanied the issuance of the GSAMP Trust 2007-HE1 Mortgage Pass-Through Certificates, Series 2007-HE1 discloses that the Depositor is a wholly-owned subsidiary and an affiliate of the Sponsor that made the R&Ws at issue in the Putback Action, and both the Depositor and the Sponsor are named as Defendants in the Putback Action.

20. In its submission and at the hearing on June 17, 2019, AWC made various arguments that the Depositor consent provision was inapplicable, including that the plain language of the provision did not apply to the funding of the Putback Action, that by virtue of the Depositor's affiliation with the Sponsor and other provisions of the PSA (in particular Section 2.01) the Depositor had no consent right regarding the Putback Action, and that the Depositor waived such rights as it may have had by, among other things, failing to appear in this proceeding.

21. The court requested AWC to submit a Certification of Beneficial Ownership for *in camera* review, for consideration pursuant to the July 1, 2019 Protective Order issued by the court. The court has had the opportunity to review the Certification of Beneficial Ownership of AWC, which reveals substantial direct holdings in the Trust.

22. Based on the terms of the PSA, the submissions of counsel, and the June 17, 2019, hearing, and in light of the facts and circumstances pertaining to this Trust and this proceeding, the Trustee is hereby directed and authorized to continue prosecution of the Putback Action and the claims set forth in the SWN (the "Asserted Claims") and is directed and authorized to use moneys from the Trust Fund (including, without limitation, funds deposited from time to time in the Collection Account, the Excess Reserve Fund Account, or the Distribution Account) for payment or reimbursement of all fees, expenses, advances, disbursements or other liabilities incurred by the Trustee (including, without limitation, attorney's fees) in connection therewith pursuant to the terms of the PSA including, without limitation, Section 2.07, 3.11, and 8.05 thereof. The Trustee is not required to expend its own funds or otherwise incur financial liability pursuing legal claims on behalf of the Trust. To the extent Trust assets become insufficient to fund the prosecution of the Putback Action as directed in this Order, the Trustee may seek further instructions from the court.

23. The court further directs and authorizes the Trustee to take the steps necessary to seek reimbursement from the Trust Fund (including, without limitation, the Collection Account, the Excess Reserve Fund Account, or the Distribution Account) for Holder Paid Expenses (as defined in the Petition), which amounts may be re-deposited into the indemnity account pursuant to the terms of the D&I.

24. This Order does not express a view as to the merits of the Asserted Claims or the Putback Action. Nor does this court express a view as to the applicability of the Depositor consent provision set forth in PSA § 2.07 as a condition to the commencement or prosecution of the Putback Action, provided, however, that as indicated above, this court specifically finds that the Trustee is entitled to be paid, reimbursed and indemnified from the Trust Fund (including, without limitation, the Collection Account, the Excess Reserve Fund Account, or the Distribution Account) for any fees, expenses, advances, disbursements or other liabilities incurred by the Trustee (including, without

limitation, attorney's fees) in connection with the Putback Action and the Asserted Claims. The Depositor did not file a response to the Petition or appear at the hearing on June 17, 2019, notwithstanding the Depositor's awareness of this proceeding as reflected in its May 22, 2019 letter and the stipulation to which it agreed in the Putback Action. Accordingly, there has been no opposition in this proceeding to the relief the Trustee seeks in the Petition by the Depositor or any other party.

25. All actions taken (or not taken) by the Trustee in accordance with this Order, including, without limitation, any actions taken pursuant to Paragraphs 21-22 of this Order, have been, are and shall be deemed to be in good faith and comply with all applicable standards of care and duties of the Trustee under the PSA and other Governing Documents, and are fully authorized and protected by the PSA and other Governing Documents including, without limitation, Section 8.01(c) of the PSA and applicable law, and shall not subject U.S. Bank, individually or as Trustee, to any liability, and U.S. Bank, individually and as Trustee, shall be exculpated from liability in connection with any actions taken in accordance with this Order.

26. All actions taken (or not taken) by the Trustee, directly or indirectly through its counsel (including Litigation Counsel) to preserve the Asserted Claims and the Putback Action during the pendency of this proceeding, and specifically the use of the moneys available from the Trust Fund (including, without limitation, the Collection Account, the Excess Reserve Fund Account, or the Distribution Account) for payment or reimbursement of any fees, expenses, advances, disbursements or other liabilities incurred by the Trustee in connection with such actions, are hereby approved.

27. This Order is final and binding upon the Trust, the Trustee, the Depositor, all parties to the Governing Documents and any other parties involved in the administration of the Trust, including the Securities Administrator, the Master Servicer, the Servicer and any subservicer, and all persons or entities claiming a beneficial, ownership, or other interest in the Trust, vested or contingent,

even though unascertained or not in being, including, without limitation, all past, present, or future Certificateholders and their successors or assigns, as well as any other parties-in-interest, if any;

28. This Order is not applicable to any other trust, indenture, or other securitization.

29. The Trustee may provide periodic updates to Certificateholders regarding the Putback Action by issuing notices with respect to developments in the litigation and may (but shall not be obligated to) seek further instruction from the court and/or from Certificateholders, as deemed necessary or appropriate by the Trustee, as the Putback Action progresses.

30. On and after the date hereof, the Trust shall be terminated from this court's jurisdiction and the Trust and the Trustee shall not be subject to the continuing supervision of the court for the purposes of Minn. Stat. §§ 501C.0201(c)(2), 501C.0205(b), or General Rule of Practice 417.02.

Date: July 17, 2019

BY THE COURT:

Thomas A. Gilligan, Jr.
Judge of District Court